# United States Court of Federal Claims

No. 14-423 C

(Filed August 28, 2017)

_____

**E&E ENTERPRISES GLOBAL, INC.,**

                 *Plaintiff*,

**v.**

**UNITED STATES OF AMERICA,**

                 *Defendant.*

_____

Breach of Contract; Termination of Contract for Convenience; Wrongful Termination; "Turn-Key"; Motion for Partial Summary Judgment

*Cyrus E. Phillips, IV, Esquire,* Cyrus E. Phillips, IV, Attorney at Law, Williamsburg, VA, for plaintiff.

*Kelly A. Krystyniak, Esquire*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge*.

Plaintiff E&E Enterprises Global, Inc., filed a motion for partial summary judgment in this indefinite-delivery indefinite-quantity contract case on March 27, 2017; defendant filed a cross motion thereafter.[1] We heard oral arguments on the cross motions in Washington, DC, on August 17, 2017.

Plaintiff's attorney argued in part that defendant entered into this contract or terminated it for convenience in bad faith. Termination for convenience in bad faith is not commonly established in this court, as the vendor must show that the Government signed the contract without any intention of carrying out its responsibilities. *See Torncello v. United States*, 681 F.2d 756, 772 (Ct. Cl. 1982). However, we were not able to determine during oral arguments that the

---

[1]According to exchanges of emails between counsel for defendant and plaintiff, the motions for summary judgment are termed "partial" only because certain un-audited costs are not included at this stage.

agency clearly did intend to pursue this particular solution for its needs. Moreover, the Record shows that defendant had gained knowledge from earlier contract negotiations with another vendor that would have assisted plaintiff in its efforts to meet the terms of its contract.

A careful review of the record in this case has not made it possible to rule for either party at this stage of the dispute. For that reason, we must deny the cross motions for summary judgment and proceed to trial unless the parties can reach an accommodation that will resolve this case short of additional litigation.

## BACKGROUND[2]

Plaintiff E&E Enterprises won a firm fixed-price, indefinite-delivery indefinite-quantity contract with the Defense Information Systems Agency and the Defense Information Technology Contracting Organization to acquire satellite-based computer technology for use by the Defense Commissary Agency. The system that plaintiff was to assemble would provide a computer network infrastructure to connect military commissaries to each other and to the Defense Commissary Agency's main network.

This was a four-year contract potentially, starting with one $3,922,443.79 base year term and three one-year options. The contract included a standard termination for convenience clause that permitted the Government to withdraw from the contract without being in default. The clause provides that in event of termination, plaintiff would be compensated for its work performed prior to termination as well as miscellaneous costs not including lost profits.

The contract required plaintiff to provide access to Digital Subscriber Lines and Very Small Aperture Broadband Services, known as VSAT, and employ Microsoft Exchange. Plaintiff agreed to provide all required supplies and services to the Agency pursuant to this turn-key contract. Delivery orders or task orders with a minimum value of $5,000 would be used to purchase needed components of the system.

A Performance Work Statement made a part of the contract described what contract performance entailed, including the installation of four pilot test sites. Plaintiff submitted a pilot site plan in August of 2008. Agency acceptance of performance at the pilot sites would allow further ordering under the contract; i.e., additional participation by E&E in the contract was contingent on the Government's acceptance of performance at each of the four pilot sites.

The pilot sites were at Sugar Grove, West Virginia, and Oceana, Virginia -- defendant accepted those sites in November 2008. A site in Ramstein, Germany, was accepted in January 2009. The fourth site would be at Okinawa, Japan, known as PACRIM.

---

[2] For additional information concerning the nature of this case, the contracting vehicle, and a history of the proceedings, see *E&E Enterprises Global, Inc. v. United States,* 120 Fed. Cl. 165 (2015).

The site at PACRIM became a problem for plaintiff because the Agency discovered that temporarily, it did not have the funds to complete the project. Meanwhile, however, plaintiff had ordered supplies and services needed for the site from its own suppliers when the contracting officer assured E&E that the funds were forthcoming. The resulting delay in completing PACRIM caused concern among Agency personnel.

Internal email communications show that individuals among Agency management were concerned about the risk of employing small network providers, including this plaintiff. The contracting officer warned that E&E's expenses during defendant's delay of the PACRIM pilot site could bankrupt plaintiff.

Agency management believed that remaining with "big telecom players" as opposed to contractors such as E&E would mitigate their operating risks. This appears to be the basis upon which the contracting officer was told to terminate the contract. Another alleged basis for termination was that the Agency was considering upgrading to Sprint MPLS technology before issuing the original Solicitation for a VSAT solution.

After reordering the cancelled PACRIM site on March 5, the contracting officer terminated plaintiff's contract for convenience of the Government on March 12, 2009. Defendant paid E&E $473,588.35 upon negotiation of the convenience termination settlement. This amount included prorated Monthly Recurring Costs and reimbursement for plaintiff's preparation costs incurred for the cancelled PACRIM task order.

Plaintiff submitted a certified claim for additional damages to the Agency in November 2012. The claim included alternative theories of recovery: Alternative I requested damages totaling $1,534,470.82 for the additional costs associated with the termination; Alternative II contained plaintiff's contention that the Agency terminated for convenience in bad faith. Plaintiff's total claimed damages was $2,273,022.70. Defendant agreed to award an additional $97,900.31 for Alternative I, and denied Alternative II entirely. It would be helpful to the court if the parties could submit documentation clearly outlining the amount of the termination for convenience award, including plaintiff's incurred costs and defendant's reimbursements, and any other payments made to the plaintiff.

## DISCUSSION

Plaintiff filed a Complaint in this court alleging breach of contract, breach of the implied duty of good faith and fair dealing, and violation of Federal Acquisition Regulation 49.101. FAR 49.101 provides general authority in the contracting officer to terminate a contract and includes provisions limiting that authority depending on various circumstances.

This court has granted a motion by defendant to dismiss Counts III and IV of plaintiff's Alternative I claim because plaintiff did not appeal the agency's denial of that claim. That is the law of this case.

We expect to schedule a hearing soon after issuance of this Opinion and Order to schedule pre-trial activities and to discuss with the parties various issues of fact that prevent a

ruling on summary judgment. For example, whether the contracting officer was satisfied that plaintiff could manage contract requirements given the VSAT system that would be employed; whether defendant's prior experience with a vendor on this same system should have alerted it to needed changes before seeking new bids; and what the contracting officer meant by having an understanding with vendors that the contract's intent was to "order all sites, costs allowing."

## CONCLUSION

We have not attempted to discuss the issues presented by plaintiff and defendant in detail in this Opinion and Order denying cross-motions for partial summary judgment. The facts are complex because of the nature of this contract, and the parties have presented legal claims and defenses that may depend on factual determinations that must be made at trial.

The court will meet with counsel in the near future to schedule pre-trial deadlines and to highlight the factual issues in dispute. Meanwhile, plaintiff's Motion for Partial Summary Judgment, filed March 27, 2017, is DENIED; defendant's Motion for Partial Summary Judgment, filed April 27, 2017, is DENIED.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge